In the Matter of Harold P. WALTERS and Patricia A. Walters, his wife, Debtors,

v.

UNITED STATES NATIONAL BANK IN JOHNSTOWN, Appellant.

No. 89–3015.

United States Court of Appeals, Third Circuit.

Argued May 15, 1989.

Decided July 20, 1989.

Alan B. Gordon (argued), Sable, Makoroff & Libenson, Pittsburgh, Pa., for debtors.

Dennis S. Shilobod (argued), Messrs. Shilobod & Crenney, Pittsburgh, Pa., for appellant.

Before GIBBONS, Chief Judge, and NYGAARD and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

The United States National Bank in Johnstown appeals from an order of the district court which permitted Harold P. Walters, a bankrupt, to avoid a judicial lien on his homestead pursuant to 11 U.S.C. § 522(f)(1) for a debt which was non-dischargeable for fraud under 11 U.S.C. § 523(a)(2)(A). The bank, which holds the judgment, contends that the court erred in permitting a bankrupt whose debt was not dischargeable to claim the homestead exemption granted by Congress in 11 U.S.C. § 522(d). We affirm.

The bank holds a judicial lien under Pennsylvania law for a judgment against Harold Walters and Patricia, his wife, in the amount of $428,177.54. That lien is based on a judgment that Harold Walters defrauded it by procuring a loan on the basis of misrepresentations. The judgment was rendered by the Court of Common Pleas of Somerset County on May 2, 1980, and revived in 1985.

On July 20, 1981, the Walters filed a voluntary bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code. Listed among their assets was their residence at R.D. # 4, Box 212–A, Berlin, Pennsylvania, which they held as tenants by the entireties. The bank filed an adversary proceeding in the Bankruptcy Court objecting to the dischargeability of its $428,177.54 judg-

ment on the ground that the debt it represents was procured by fraud. After a hearing, the Bankruptcy Court held that the debt was dischargeable as to Patricia Walters because she did not participate in the fraud, but that section 523(a)(2)(A) barred its discharge as to Harold Walters; *United States National Bank in Johnstown v. Walters,* 24 B.R. 649 (Bkrtcy.W.D. Pa.1982). The district court affirmed this ruling. The parties presently concede that Patricia Walters has been discharged, and that Harold Walters has not been.

The Walters also moved in the Bankruptcy Court to avoid the lien of the bank's judgment to the extent that it impaired their section 522(d) homestead exemption. This section shields $7,500 in equity in a bankrupt's residence. The Walters' motion thus sought exemptions totaling $15,000. After a hearing on the motion the Bankruptcy Court found that the value of the residence was $82,000, that it was encumbered by a $49,213.36 mortgage on the date of filing of the Chapter 7 petition, and thus that there was a $32,796.64 equity. The Bankruptcy Court held that Patricia Walters could avoid the bank's judgment lien to the extent it impaired her $7,500 exemption, but that Harold Walters could not. The Bankruptcy Court in effect read into the exemption in section 522 a qualification that the debts for which liens may be set aside must be dischargeable under section 523.

■■■■ On appeal and cross-appeal, the district court, adopting the report of a United States Magistrate, reversed the Bankruptcy Court's order with respect to Harold Walters. This appeal followed. Although the bank in its cross-appeal to the district court unsuccessfully sought a reversal of the Bankruptcy Court ruling in favor of Patricia Walters' claim of exemption, it has not pursued that claim here. Thus the present appeal involves only the question whether the district court was correct in holding that Harold Walters could also claim a $7,500 exemption. Moreover, the bank concedes that since Patricia Walters has been discharged from the bank's judgment, it could, under Pennsylvania law,

reach only whatever interest a husband has in a tenancy by the entireties while his wife is a live resident of the premises.

The case presents a question of statutory interpretation on which we exercise plenary review. Rule of Bankruptcy Procedure 8013; *In re McKeesport Steel Castings Company,* 799 F.2d 91 (3d Cir.1986); *Universal Minerals v. C.A. Hughes & Company,* 669 F.2d 98 (3d Cir.1980). The starting point is obviously the text of the lien avoidance statute, which provides:

> Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (1) a judicial lien; or
>
> (2) [certain] nonpossesory, nonpurchase-money security interest[s] ...

11 U.S.C. § 522(f). The cross-reference to subsection (b) of section 522 is to the provision that "an individual debtor may exempt from property of the estate ... the property that is specified under subsection (d) of this section." 11 U.S.C. § 522(b)(1). The property specified under subsection (d) includes "[t]he debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence." 11 U.S.C. § 522(d)(1).

It is undisputed that the bank holds a judicial lien within the meaning of section 522(f), and that Harold Walters has an interest in real property used as a residence. Thus the statutory language appears to apply, with the consequence, specified in subsection 522(c), that

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, except—
>
> (1) a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title; or
>
> (2) a lien that is—

(A) not avoided under section 544, 545, 547, 548, 549, or 724(a) of this title;

(B) not avoided under section 506(d) of this title; or

(C)(i) a tax lien, notice of which is properly filed; and

(ii) avoided under section 545(2) of this title.

Thus Congress when it enacted the federal exempt property statute specified a number of specific exemptions, none of which apply to the bank's judgment lien.

The bank's argument focuses our attention not on section 522, the exempt property section, but on section 523, which lists debts which are not dischargeable in bankruptcy. The bank relies on section 523(a), which makes non-dischargeable debts incurred for obtaining money, property or services by fraud. It is necessary, however, to look at section 523(a) in its entirety[1] so as to appreciate its relationship with section 522(c). In the latter, Congress specified cross-references to section 523(a)(1) (taxes and customs duties) and to section 523(a)(5) (alimony and child support). These are neither dischargeable nor exemptible. In contrast, section 522(c) contains no cross-reference to section 523(a)(2) dealing with fraud or other intentional

torts. Thus Congress was well aware of the relationship between the two sections, and carefully excepted from the exemption section some, but not all, non-dischargeable debts.

The bank has referred us to no legislative history, nor have we found any, suggesting that section 523 was intended, generally, to trump section 522. Indeed, had that been the intention the exceptions in section 522(c) would have been redundant. Referring to that section the identical House and Senate Reports read:

Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge.

S.Rep. No. 95–989, 95th Cong., 2nd Sess 76, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5862; H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. 361, *reprinted in* 1978 U.S.Code Cong. & Ad.News 6317. The drafters of the exemption section thus were aware that exempt property would be protected against some, but not all, non-dischargeable debts.

The bank urges that we should nevertheless rewrite section 522 because if it is read literally it conflicts with the overall pur-

---

1. The section provides in relevant part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt

(1) for a tax or customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(6) of this title, whether or not a claim for such tax was filed or allowed;

(B) with respect to which a return, if required—

(i) was not filed; or

(ii) was filed after the date on which such return was last due, under applicable law or under any extension and after two years before the date of the filing of the petition; or

(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax;

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; or

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with the intent to deceive;

\*    \*    \*    \*    \*    \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operations of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C. § 523(a) (footnote omitted).

poses of the Bankruptcy Code. There is no such conflict, because the Bankruptcy Code has several goals, not the least of which is giving debtors a fresh start in life. Another, obviously somewhat conflicting, goal is to discourage debtor misconduct by preventing discharge of certain kinds of debt. Congress, after hearing from interested groups in the economy, struck a balance between competing goals. While we might have struck a different balance, we are not free to disregard the clear legislative judgment.

The judgment appealed from will, therefore, be affirmed.